UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| DuPont De Nemours, Inc.,<br>974 Centre Road, Chestnut Run Plaza,<br>Wilmington, Delaware 19805<br><br>DuPont Safety & Construction, Inc.,<br>974 Centre Road, Chestnut Run Plaza,<br>Wilmington, Delaware 19805<br><br>and<br><br>DuPont Specialty Products USA, LLC<br>974 Centre Road, Chestnut Run Plaza,<br>Wilmington, Delaware 19805<br><br>           Plaintiffs,<br><br>     v.<br><br>Jiangsu Qingyun New Materials Co., Ltd.,<br>166 Jiang Hai Road,<br>Economic and Technology Development Area,<br>Nantong, Jiangsu Province, China<br><br>and<br><br>Kingwills International Ltd.<br>Unit 2 of Lg 1, Mirror Tower, 61 Mody Rd.,<br>Tsim Sha Tsui, Kowloon, Hong Kong, 20002 China<br><br>           Defendants. | Civil Action No. 3:26-cv-00057<br><br>**DEMAND FOR JURY TRIAL** |

## **COMPLAINT**

Plaintiffs DuPont De Nemours, Inc., DuPont Safety & Construction, Inc., and DuPont Specialty Products USA, LLC (collectively "DuPont") bring this Complaint against defendants Jiangsu Qingyun New Materials Co., Ltd., and Kingwills International Ltd. (collectively "Defendants" or "Kingwills") and allege as follows:

1

**NATURE OF THE ACTION**

1. This is an action against Kingwills for unlawful misappropriation of DuPont's trade secrets (1) under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*, (2) under the Virginia Uniform Trade Secrets Act ("VUTSA"), Va. Code § 59.1-336 *et seq.*, (3) under the North Carolia Trade Secrets Protection Act ("NCTSPA"), N.C. Gen. Stat. §§ 66-152 *et seq.*, and (4) unlawful conversion of DuPont's proprietary information under the common law.

2. Since 1967, DuPont researched, developed, and commercialized the first of its kind, and difficult-to-emulate, flash-spun nonwoven material that DuPont manufactures and sells in the United States and around the world under its "Tyvek®" brand. As the global leader of flash-spun nonwoven material, DuPont has developed and maintained valuable trade secrets and proprietary and confidential information related to its Tyvek material.

3. Kingwills has wrongfully obtained DuPont's trade secrets and proprietary information regarding, among other things, DuPont's manufacturing, research and development, and operation concerning Tyvek materials (the "Confidential Information").

4. Kingwills wrongfully used and exploited DuPont's Confidential Information to develop and commercialize its own flash-spun nonwoven material Hypak, which directly competes with DuPont's Tyvek products in the United States and globally. The first act in the United States in furtherance of Kingwills' misappropriation as alleged in this Complaint occurred in 2024, which is also the year that DuPont became aware that Hypak was imported into the United States.

5. Kingwills' unlawful conduct has caused injury to DuPont, including reducing certain demand for Tyvek products. In this action, DuPont seeks damages arising from Kingwills' actions, including equitable relief (including, but not limited to, permanent injunction,

compensatory damages (including, but not limited to, DuPont's losses globally, unjust enrichment, and a reasonable royalty due to Kingwills' misappropriation and conversion), exemplary damages, and attorneys' fees.

## THE PARTIES

6. Plaintiff DuPont de Nemours, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 974 Centre Road, Chestnut Run Plaza, Wilmington, Delaware 19805.

7. Plaintiff DuPont Safety & Construction, Inc. ("DuPont S&C") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 974 Centre Road, Chestnut Run Plaza, Wilmington, Delaware 19805. DuPont S&C is a wholly owned subsidiary of DuPont de Nemours, Inc.

8. Plaintiff DuPont Specialty Products USA, LLC ("DuPont SP USA") is a company organized and existing under the laws of the State of Delaware, with a principal place of business at 974 Centre Road, Chestnut Run Plaza, Wilmington, Delaware 19805. DuPont SP USA is a wholly owned subsidiary of DuPont de Nemours, Inc.

9. Upon information and belief, Jiangsu Qingyun New Materials Co., Ltd. ("Kingwills New Material") is a company organized and existing under the laws of China, with its principal place of business at 166 Jiang Hai Road, Economic & Technological Development Area, Chongchuan District, Nantong, Jiangsu, 226000 China.

10. Upon information and belief, Kingwills International Ltd. ("Kingwills International") is a company organized and existing under the laws of Hong Kong, with its principal place of business at Unit 2 of Lg 1, Mirror Tower, 61 Mody Rd., Tsim Sha Tsui, Kowloon, Hong Kong, 20002 China.

11. Upon information and belief, Kingwills New Material manufactures the Hypak materials and supplies them to Kingwills International for distribution and sales outside of the Chinese market. Upon information and belief, Kingwills International is an "alter ego" of Kingwills New Materials. Upon information and belief, Kingwills International was established by Kingwills New Material for purpose of selling the Hypak materials to customers outside of China, including in the United States. Upon information and belief, Kingwills New Material exercises complete domination and control over Kingwills International. Upon information and belief, Kingwills International has been promoting and distributing the Hypak materials in the United States under the direction or control of Kingwills New Material. Upon information and belief, Daniel Sun, the vice president in charge of overseas sales at Kingwills New Material, is also the managing director of Kingwills International. Upon information and belief, Kingwills International has no employees, and the operation of Kingwills International is solely handled by Mr. Sun. There is a unity of interest and ownership between Kingwills New Material and Kingwills International, and Kingwills New Material at least uses Kingwills International to evade a personal obligation and to gain an unfair advantage.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Count I arises under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq*. This Court has supplemental jurisdiction over the VUTSA, NCTSPA, and conversion claims under 28 U.S.C. § 1367(a) because they are so related to Count I that they form part of the same case or controversy under Article III of the U.S. Constitution. Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because complete diversity of

citizenship exists between DuPont and Kingwills and the amount in controversy exceeds the sum of $75,000.

13. Both Kingwills New Material and Kingwills International are subject to the personal jurisdiction of this Court pursuant to Va. Code §§ 8.01-328.1(A)(1)-(4), and exercise of personal jurisdiction is consistent with the requirements of the Due Process Clause of the Fifth Amendment of the United States Constitution.

14. The causes of action set forth in this Complaint arise from Kingwills' business dealings and transactions in the Commonwealth of Virginia, the State of North Carolina, and elsewhere in the United States.

15. Kingwills transacts business in this Commonwealth of Virginia which gives rise to the causes of action set forth in this Complaint. Upon information and belief, Kingwills International entered an International Sales and Marketing Agreement with Purduke Consulting, LLC, a Virginia limited liability corporation with a place of business at 8220 Hampton Green Drive, Chesterfield, VA 23832 on July 2024. Upon information and belief, Purduke Consulting was created and is owned by an individual named Todd Barnes, who resides in Richmond, Virginia. Mr. Barnes worked at DuPont, including for over 20 years at DuPont's plant in Spruance, Virginia, where DuPont manufactured its Tyvek products in the United States (the "Spruance facility"). On information and belief, Mr. Barnes was contacted in 2024 by Daniel Sun, who is the vice president in charge of overseas sales at Kingwills New Material and the managing director of Kingwills International. Upon information and belief, starting some time in 2024, Mr. Barnes promoted, marketed, and sold the Hypak materials for Kingwills New Material in the United States and reported to Mr. Sun. Upon information and belief, Mr. Sun also engaged regularly in

conversations with Mr. Barnes regarding the recruitment of additional DuPont employees for Kingwills New Material.

16. Kingwills also engages in a persistent course of conduct both inside and outside the Commonwealth of Virginia which gives rise to the causes of action set forth in this Complaint and caused tortious injury to DuPont in this Commonwealth.

17. Upon information and belief, Kingwills has been promoting and distributing the Hypak materials in the United States since 2024. For example, Kingwills has been shipping the Hypak materials to its distributors in the United States, like Harbourpoint Innovations Inc. ("Harbourpoint") in North Carolina and, upon information and belief, Lakeland Fire + Safety ("Lakeland"). Upon information and belief, Harbourpoint has been a key distributor of Kingwills in the United States. On information and belief, Kingwills sent Hypak materials made using or derived from DuPont's Confidential Information to Harbourpoint in North Carolina starting in 2024. In early 2025, DuPont became aware that Harbourpoint had recruited Anthony Palemo, a former sales professional from DuPont who had 20 years of experience of selling Tyvek graphics and industrial products, in order to ensure success of a possible venture with Kingwills. Upon information and belief, Kingwills sought and obtained DuPont's Confidential Information from Mr. Palermo and Harbourpoint.

18. Upon information and belief, Kingwills has also been actively attending U.S. trade shows starting in early 2024. For example, Kingwills attended trade shows in the United States, like the Printing United Expo in Las Vegas, Nevada and the Medical Design & Manufacturing (MD&M) West in Anaheim, California. Upon information and belief, Mr. Sun together with Mr. Barnes attended the Printing Expo in Las Vegas in September 2024 on behalf of Kingwills, and Kingwills had a booth assigned. Upon information and belief, Kingwills also shipped samples of

downstream products made from the Hypak materials to the United States for purpose of displaying at the trade shows.

19. Kingwills' promotion and distribution of the Hypak materials in the United States has caused tortious injury to DuPont, particularly in this Commonwealth. DuPont produces Tyvek across multiple manufacturing lines in the Spruance facility in the Commonwealth. DuPont has experienced reduced demand for certain Tyvek products made at the Spruance facility believed to be in part because of competition from Kingwills.

20. Thus, Kingwills has sufficient contacts with the Commonwealth of Virginia and with the United States as a whole such that exercise of personal jurisdiction would comport with the Fifth Amendment's Due Process Clause.

21. Alternatively, this Court has personal jurisdiction over Kingwills New Material and Kingwills International pursuant to Fed. R. Civ. P. 4(k)(2) in that (A) this action arises under federal law, (B) these entities are not subject to jurisdiction in any state courts of general jurisdiction, and (C) exercising jurisdiction over these entities is consistent with the United States Constitution and laws as held, for example, in *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403 (Fed. Cir. 2009) and *Lismont v. Alexander Binzel Corp.*, 2013 WL 6095461 (E.D. Va. Nov. 18, 2013).

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because each Defendant is a foreign corporation who is not a resident of the United States and who is subject to personal jurisdiction in this District, and thus is subject to venue in any judicial district including this District.

## FACTS

**A.    DuPont's Confidential Information and Kingwills' Misappropriation of the Same**

23.　　DuPont has researched, developed, and commercialized flash-spun nonwoven materials sold under its Tyvek® brand for over 70 years. DuPont is the inventor of flash-spinning and, for decades, was the only company to successfully master large-scale commercial manufacturing of flash-spun nonwoven materials (e.g., sheets).

24.　　Tyvek occupies a uniquely broad range of commercial uses, spanning both hard-structure and soft-structure applications. DuPont manufactures and sells Tyvek into industrial, construction (e.g., shelter), medical (e.g., PPEs and packaging), pharmaceutical, consumer, and protective-apparel channels, either as finished goods or as roll-stock incorporated by downstream converters into hundreds of products. Examples include water-resistive barriers and roofing membranes in building construction, sterile medical and pharmaceutical packaging, graphics and printing substrates, and protective garments used in healthcare, industrial, agricultural, and clean-room environments. These diverse applications reflect Tyvek's decades-long adoption as a category-defining flash-spun nonwoven that is recognized and specified across nearly every market segment in which it appears.

25.　　DuPont maintains the secrecy of its Confidential Information concerning the design, development, manufacturing, and commercialization of Tyvek products (including, among other categories, proprietary spin-agent systems, polymer blending, flash-spinning equipment, bonding processes, flash-spinning plant design/operations, confidential commercial strategies, and combinations of the same). DuPont's trade secrets derive independent economic value from not being generally known or readily ascertainable and are reflected in confidential process documentation and internal materials. DuPont takes reasonable measures to protect their secrecy (including, among other categories, access controls, confidentiality agreements, physical and IT security, and employee training).

26. DuPont's Tyvek operations substantially involve interstate commerce, with U.S. manufacturing (in particular, the Spruance facility in Spruance, Virginia) and U.S. employees dedicated to Tyvek manufacturing, R&D, engineering, technical support, and leadership.

27. Kingwills unlawfully obtained DuPont's Confidential Information and documents related to Tyvek®, including technical specifications, manufacturing protocols, business strategy reports, and customer-related data. Kingwills' possession and use of these confidential documents and information—without DuPont's consent—constitutes wrongful acquisition and exploitation of DuPont's property, providing Kingwills an unfair competitive advantage and causing substantial injury to DuPont's Tyvek® business.

28. DuPont initiated an ITC investigation concerning Kingwills' misappropriation of DuPont's trade secrets and conversion on October 8, 2024. DuPont has since learned of additional, separate and distinct acts of misappropriation by Kingwills of DuPont's trade secrets that could not have been discovered prior to the ITC investigation, and that Kingwills has converted DuPont's Confidential Information for its own use. For example, in the ITC investigation, Kingwills produced documents that were not designated as confidential under the Protective Order, which evidence the misappropriation of DuPont's Confidential Information that DuPont was not aware of and could not have been aware of. For example, the documents include strategies and specifications for Tyvek® and specialized product configurations for different applications. They also cover DuPont's market segmentation, branding strategies, distribution models, and Tyvek® non-public technical data. These documents include confidential process documentation, operational parameters, and strategic commercial information that DuPont developed and safeguarded over decades. These documents include KWILLS-1424_0003199, KWILLS-1424_0048135, KWILLS-1424_0048148, KWILLS-1424_0060499, KWILLS-1424_0154377,

KWILLS-1424_0158544, KWILLS-1424_0355564, and KWILLS-1424_0003188. Upon information and belief, Kingwills has also misappropriated some aspects of DuPont's manufacturing processes for Tyvek, including processes relating to line start up, polymer and product characteristics, combinations of flash-spinning equipment, bonding and related sheet paths or feeding, and combinations thereof. Trade secrets contained within the above-referenced documents or processes and the misappropriation thereof are distinct from the trade secrets to be heard at the ITC or referenced in the ITC Complaint. The implausible speed and scope of Kingwills' commercialization efforts further confirm that Kingwills leveraged DuPont's confidential know-how to accelerate its entry into the flash-spun nonwoven market.

**B.    DuPont Took Reasonable Measures to Safeguard Its Confidential Information**

29.    DuPont has also taken extensive measures to keep DuPont's Confidential Information confidential, including adopting a trade secret risk management framework aligning with widely recognized international standards and establishing comprehensive confidentiality policies and procedures related to cybersecurity, physical security, employees, and third parties.

30.    For example, DuPont's trade secret risk management framework requires each business unit to establish a Trade Secret Risk Management Plan and appoint a Trade Secret Risk Manager ("TSRM") responsible for developing and implementing procedures and protections, developing training, and acting as a point of contact for trade secret related questions. The formal role of TSRM for the Tyvek business, which DuPont considers extremely valuable and important, has existed for many years. Under its trade secret risk management framework, DuPont further created a Global Tyvek Information Security Plan that adapts DuPont's general approach on information security to the specific characteristics and needs of the Tyvek business unit, providing Tyvek-focused guidance to managers and employees.

31. Further, DuPont's Code of Conduct requires all employees and contract workers to be aware of trade secrets and proprietary information they have access to, disclose them under confidentiality and only to individuals on a "need-to-know" basis, and take measures to effectively maintain the secrecy of the company's trade secrets.

32. DuPont also uses contractual measures to protect its trade secrets, including, among other categories, employee confidentiality agreements and third-party non-disclosure agreements for disclosing information to third parties, such as customers and suppliers.

33. DuPont has also implemented numerous physical security and cybersecurity measures at its facilities, such as having security professionals at points of entry and other strategic locations, restricting access to authorized personnel, requiring DuPont employees to use security badges each time when entering company property, and requiring visitors to sign in and out and always be escorted by a DuPont employee.

### C. Kingwills' Formation, Implausibly Rapid Commercialization, and Importation into the United States

34. Upon information and belief, Kingwills was formed and operates to produce and sell flash-spun nonwoven material that competes directly with Tyvek products.

35. Kingwills' Hypak targets the same commercial channels as DuPont's Tyvek—often explicitly mirroring Tyvek's product positioning. Upon information and belief, Kingwills markets Hypak for construction use, roofing, medical and sterile packaging, pharmaceutical applications, and printed products, and promotes product grades that track DuPont naming conventions (e.g., Tyvek 1070D vs. Hypak H1070D). Hypak is displayed at industry trade shows serving Tyvek customer segments, including garments, among many other segments.

36. Upon information and belief, Kingwills' own marketing has positioned its "Hypak" products as a "better replacement to Tyvek," and Kingwills has exhibited and distributed Hypak

samples in 2024 at U.S. trade shows (e.g., MD&M West in Anaheim, California). Import records reflect shipments of Kingwills' flash-spun nonwoven materials from China into the United States, including a July 2024 shipment sent by Kingwills to Harbourpoint in Charlotte, North Carolina and another shipment sent by Kingwills International to a U.S. customer in Illinois.

37. Upon information and belief, at a September 2024 U.S. trade show, Kingwills displayed booth materials made from the Hypak material and directed attendees via QR code to Kingwills' content and contact information listing Harbourpoint as the U.S. contact, further showing Kingwills' U.S. commercialization of products derived from DuPont's misappropriated Confidential Information.

38. Kingwills knew or had reason to know, based on the unique market reality that DuPont alone had commercialized flash-spun nonwoven Tyvek at scale for decades, that its possession and use of Tyvek Confidential Information was improperly acquired and derived through unlawful or unfair means.

D. **Injury and Threat of Further Injury**

39. Kingwills' unlawful acquisition, use, and disclosure of DuPont's Confidential Information have caused and threaten to cause substantial injury to DuPont's Tyvek business by enabling Kingwills to undercut pricing, confuse customers, and attempt to erode Tyvek's reputation for quality in critical applications (e.g., sterile medical packaging and protective apparel).

40. Kingwills' acts are willful and malicious, undertaken to obtain a wrongful head-start and unfair advantage, and they continue as Kingwills expands its marketing, recruiting, and importation in the United States.

## COUNT I
**(Misappropriation of Trade Secrets under DTSA Against Kingwills)**

41. DuPont repeats and incorporates by reference the allegations contained in Paragraphs 1–40 as if fully set forth herein.

42. DuPont owns protectable trade secrets related to flash-spun nonwoven materials (i.e., Tyvek® materials)—including, among other categories, proprietary spin-agent systems, polymer blending, flash-spinning equipment, bonding processes, flash-spinning plant design/operations, various confidential production, commercial and technical strategies for Tyvek as described above, and combinations of the same—that derive independent economic value from not being generally known and for which DuPont undertakes reasonable measures to maintain secrecy.

43. These trade secrets relate to products and services used in, and intended for use in, interstate commerce, including Tyvek products manufactured and sold in the United States.

44. DuPont's trade secrets have independent economic value for DuPont from not being generally known because they provide DuPont's Tyvek business with a competitive advantage in the marketplace, allowing the business to operate more efficiently, innovate more effectively, and earn higher profits compared to competitors who lack access to the same information.

45. Kingwills misappropriated DuPont's trade secrets by acquiring them through improper means, and by using and disclosing such trade secrets without consent, knowing or having reason to know they were obtained through improper means.

46. Kingwills' misappropriation was willful and malicious, undertaken to obtain a head-start and unfair competitive advantage in the United States market, including through importation of accused materials and marketing them as "better replacement to Tyvek" at U.S. trade shows.

47. As a direct and proximate result of Kingwills' DTSA violations, DuPont has suffered and will continue to suffer damages (including lost profits, price impacts, and costs to investigate and mitigate the theft) and irreparable harm to its competitive position and goodwill.

48. DuPont seeks all relief available under the DTSA, including injunctive relief to prevent further use and disclosure, compensatory damages, exemplary damages for willful and malicious misappropriation, and reasonable attorneys' fees. *See* 18 U.S.C. §§ 1836(b)(3)(A)–(D).

## COUNT II
### (Misappropriation of Trade Secrets under VUTSA Against Kingwills)

49. DuPont repeats and incorporates by reference the allegations contained in Paragraphs 1–48 as if fully set forth herein.

50. DuPont's protectable trade secrets constitute "trade secrets" under Va. Code § 59.1-336, possessing independent economic value from not being generally known and being the subject of efforts reasonable under the circumstances to maintain secrecy.

51. Kingwills misappropriated DuPont's trade secrets by acquiring them through improper means, and by using and disclosing such trade secrets without consent, knowing or having reason to know they were obtained through improper means.

52. Kingwills knew or had reason to know its acquisition and use of DuPont's trade secrets was improper, including given the long-standing exclusivity of DuPont's commercial flash-spinning capabilities and the implausible speed of Kingwills' development and scale-up.

53. Kingwills' misappropriation was willful and malicious, warranting exemplary (punitive) damages and attorneys' fees under Va. Code § 59.1-338.

54. As a direct and proximate result of Kingwills' VUTSA violations, DuPont has sustained actual losses and Kingwills has been unjustly enriched; DuPont faces continued threat

of misappropriation and irreparable harm due to Kingwills misappropriation of DuPont's trade secrets.

55. DuPont seeks all relief available under VUTSA, including injunctions prohibiting further use and disclosure, damages measured by both DuPont's losses and Kingwills' unjust enrichment (or a reasonable royalty), exemplary damages, and attorneys' fees.

## COUNT III
### (Misappropriation of Trade Secrets under NCTSPA Against Kingwills)

56. DuPont repeats and incorporates by reference the allegations contained in Paragraphs 1–55 as if fully set forth herein.

57. DuPont's protectable trade secrets constitute "trade secrets" under N.C. Gen. Stat. § 66-152, possessing independent economic value from not being generally known and being the subject of efforts reasonable under the circumstances to maintain secrecy.

58. Kingwills misappropriated DuPont's trade secrets by acquiring them through improper means, and by using and disclosing such trade secrets without consent, knowing or having reason to know they were obtained through improper means, including disclosing DuPont's trade secrets to Harbourpoint and importing products made with or derived from DuPont's trade secrets into North Carolina via Harbourpoint.

59. Kingwills knew or had reason to know its acquisition and use of DuPont's trade secrets was improper, including given the long-standing exclusivity of DuPont's commercial flash-spinning capabilities and the implausible speed of Kingwills' development and scale-up.

60. Kingwills' misappropriation was willful and malicious, warranting exemplary (punitive) damages and attorneys' fees under N.C. Gen. Stat. § 66-154.

61. As a direct and proximate result of Kingwills' NCTSPA violations, DuPont has sustained actual losses and Kingwills has been unjustly enriched; DuPont faces continued threat

of misappropriation and irreparable harm due to Kingwills misappropriation of DuPont's trade secrets.

62. DuPont seeks all relief available under NCTSPA, including injunctions prohibiting further use and disclosure, damages measured by both DuPont's losses and Kingwills' unjust enrichment (or a reasonable royalty), exemplary damages, and attorneys' fees.

## COUNT IV
### (Conversion)

63. DuPont repeats and incorporates by reference the allegations contained in Paragraphs 1–62 as if fully set forth herein.

64. DuPont's Confidential Information relates to documents and data concerning Tyvek®, including, among other categories, technical specifications, manufacturing processes, business plans, and operational data, and combinations of the same. They constitute valuable property owned exclusively by DuPont.

65. Kingwills wrongfully exercised dominion and control over DuPont's property without DuPont's consent, including, but not limited to, by obtaining, retaining, and using confidential DuPont documents and information through former and/or current DuPont Tyvek® personnel and by leveraging such information in Kingwills' manufacturing, commercialization, and competitive activities.

66. Kingwills knew or had reason to know its acquisition and use of DuPont's Confidential Information was improper, including given the long-standing exclusivity of DuPont's Tyvek® operations and the implausible speed of Kingwills' development and scale-up.

67. DuPont, as exclusive owner of Tyvek® and related documents and information, was deprived of its right to sell and otherwise obtain economic value from its ownership of Tyvek®

and related documents and information because of Kingwills' wrongful conversion of DuPont's property for Kingwills' own use.

## REQUESTED RELIEF

WHEREFORE, DuPont respectfully requests that the Court enter judgment against Kingwills and award the following reliefs:

    A.    Permanent Injunctive Relief

        a. A permanent injunction prohibiting Kingwills, its officers, agents, employees, and all persons acting in concert with it from directly or indirectly using, disclosing, exploiting, or benefitting from DuPont's Confidential Information;

        b. A permanent injunction prohibiting Kingwills from manufacturing, marketing, selling, or distributing products derived from or developed using DuPont's misappropriated or converted property;

    B.    Destruction and Remediation

        a. An order requiring the verified destruction of all DuPont property in Kingwills' possession, custody, or control, including documents, electronic files, data, and other materials embodying DuPont's Confidential Information;

        b. Such inspection, certification, and compliance measures as the Court deems necessary to ensure full remediation;

    C.    Compensatory Damages

        a. An award of compensatory damages in an amount to be determined at trial, including but not limited to:

    i. DuPont's actual losses, including lost sales, lost profits, reduced demand, and diminished production of Tyvek products in the United States and global markets;

    ii. Unjust enrichment obtained by Kingwills as a result of its unlawful conduct, to the extent not duplicative of DuPont's actual losses;

    iii. In the alternative or in addition, a reasonable royalty for Kingwills' unauthorized use of DuPont's Confidential Information;

D.  Exemplary Damages

  a. An award of exemplary damages, including enhanced damages for willful and malicious conduct, in an amount permitted by law;

E.  Attorneys' Fees and Costs

  a. An award of DuPont's reasonable attorneys' fees, expert fees, and costs incurred in connection with this Action, as permitted by applicable law;

F.  Pre-Judgment and Post-Judgment Interest

  a. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

G.  Such further and other relief as the Court may deem proper and just.

## DEMAND FOR JURY TRIAL

DuPont hereby demands a jury trial on all claims and issues presented in this Complaint so triable.

Dated: January 22, 2026                              Respectfully submitted,

*/s/ Jon M. Talotta*
Jon M. Talotta (VSB No. 44590)
HOGAN LOVELLS US LLP
8350 Broad St., 17th Fl.
Tysons, VA 22102
Tel: (703) 610-6156
Fax: (703) 610-6200
jon.talotta@hoganlovells.com

Joseph J. Raffetto (VSB No. 75333)
Celine J. Crowson (*pro hac vice forthcoming*)
Scott Hughes (*pro hac vice forthcoming*)
Nicholas Rotz (VSB No. 91035)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
joseph.raffetto@hoganlovells.com
celine.crowson@hoganlovells.com
scott.hughes@hoganlovells.com
nicholas.rotz@hoganlovells.com

Gurtej Singh (*pro hac vice forthcoming*)
HOGAN LOVELLS US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Tel: (415) 374-2300
Fax: (415) 374-2499
tej.singh@hoganlovells.com

*Attorneys for Plaintiffs*